STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, PLAINTIFF v. ANDREW JESSE YOUNG, MARY, CORTEZ WIMBERLY, NICHOLAS YOUNG, A MINOR, AND MAY GEE YOUNG, A MINOR, DEFENDANTS.

No. 9321SC269

(Filed 7 June 1994)

**Insurance § 528 (NCI4th)— definition of underinsured vehicle—vehicle owned by insured included**

An underinsured highway vehicle as defined in N.C.G.S. § 20-279.21(b)(4) can include a motor vehicle owned by the named insured, and the provisions in the policies issued by plaintiff attempting to exclude such coverage are invalid and unenforceable.

**Am Jur 2d, Automobile Insurance § 322.**

**Automobile insurance: what constitutes an "uninsured" or "unknown" vehicle or motorist, within uninsured motorist coverage. 26 ALR3d 883.**

**Uninsured motorist coverage: validity of exclusion of injuries sustained by insured while occupying "owned" vehicle not insured by policy. 30 ALR4th 172.**

Appeal by defendants from judgment entered 28 December 1992 by Judge James A. Beaty, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 11 January 1994.

STATE FARM MUT. AUTO. INS. CO. v. YOUNG

[115 N.C. App. 68 (1994)]

*Frazier, Frazier & Mahler, by James D. McKinney and Torin L. Fury, for plaintiff-appellee.*

*Robinson Maready Lawing & Comerford, by W. Thompson Comerford, Jr., and Jerry M. Smith, for defendant-appellants.*

MARTIN, Judge.

Plaintiff brought this declaratory judgment action seeking a determination of its obligations under the underinsured motorist coverage provisions of automobile insurance policies issued to its insureds, defendants Andrew Jesse Young (hereinafter "Young") and Mary Cortez Wimberly (hereinafter "Wimberly"). The parties stipulated to the following facts. On 26 January 1990, Nicholas Young ("Nicholas"), the minor son of defendants Young and Wimberly, sustained serious injuries when the automobile in which he was a passenger was involved in an accident. The automobile was owned and operated by Young, and the accident was caused solely by Young's negligence. Young's vehicle was insured under a policy issued to him by plaintiff covering two vehicles and providing $100,000 per person/$300,000 per accident limits for both liability and underinsured motorist (hereinafter "UIM") benefits. That policy was issued before G.S. § 20-279.21 was amended to preclude intrapolicy stacking of underinsured motorist coverage and accordingly afforded possible stacked UIM benefits of $200,000 per person/$600,000 per accident. *See Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 420 S.E.2d 124 (1992). Additionally, plaintiff had issued to Wimberly a policy insuring a single vehicle and containing $100,000 per person/$300,000 per accident limits for both liability and UIM benefits. Both policies contain the following pertinent language:

*"Insured"* as used in this Part means:

1. You or any family member.

. . .

*"Uninsured motor vehicle"* means a land motor vehicle or trailer of any type: . . .

5. To which, with respect to damages for *bodily injury* only, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is:

a. equal to or greater than the minimum limit specified by the financial responsibility law of North Carolina: and

b. less than the limit of liability for this coverage.

. . .

However, "*uninsured motor vehicle*" does not include any vehicle or equipment:

1. Owned by you.

. . .

Although Young and Wimberly were divorced at the time of the accident, for purposes of this appeal, the parties have stipulated that Nicholas is a resident of both households, and accordingly, a Class I insured under each parent's insurance policy issued by plaintiff. *See Busby v. Simmons*, 103 N.C. App. 592, 406 S.E.2d 628 (1991). Plaintiff paid Nicholas $100,000 representing the entire amount of liability coverage available under the policy issued to Young. Because his damages exceeded that amount, Nicholas sought additional recovery pursuant to Young and Wimberly's UIM coverage in the amounts of $200,000 and $100,000 respectively, with a credit to plaintiff for the $100,000 paid under the liability provision of the Young policy. However, plaintiff denied UIM benefits, relying on a concurrent reading of the above cited provisions of the Young policy which excluded vehicles owned by Young from the definition of an uninsured motor vehicle and which included an underinsured vehicle within the definition of an uninsured motor vehicle. On 28 December 1992 the trial court awarded summary judgment in favor of plaintiff concluding that under the language of the policies issued to Wimberly and Young and under the provisions of G.S. § 20-279.21(b) *et seq.*, there was no UIM coverage available to defendants under either of the policies.

Defendants appeal, contending that the policy provisions which exclude "owned vehicles" from UIM coverage are invalid because they conflict with the statutory provisions for UIM coverage contained within the Motor Vehicle Safety and Financial Responsibility Act (the "Act"). We agree and reverse the decision of the trial court. Summary judgment should be granted when the materials before the court establish that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c); *Trust Co. v. Creasy*, 301 N.C. 44, 269 S.E.2d 117 (1980). When appropriate, summary judgment may be rendered

STATE FARM MUT. AUTO. INS. CO. v. YOUNG

[115 N.C. App. 68 (1994)]

against the moving party. N.C. Gen. Stat. § 1A-1, Rule 56(c). In this case, the relevant material facts have been stipulated, leaving only questions of law for the court.

Under the Act an "uninsured motor vehicle" is defined as:

[A] motor vehicle as to which there is no bodily injury liability insurance and property damage liability insurance in at least the amounts specified in subsection (c) of G.S. 20-279.5, or there is such insurance but the insurance company writing the insurance denies coverage thereunder, or has become bankrupt, or there is no bond or deposit of money or securities as provided in G.S. 20-279.24 or 20-279.25 in lieu of such bodily injury and property damage liability insurance, or the owner of the motor vehicle has not qualified as a self-insurer under the provisions of G.S. 20-279.33, or a vehicle that is not subject to the provisions of the . . . Act.

N.C. Gen. Stat. § 20-279.21(b)(3). However, under the statute, the term "uninsured motor vehicle" specifically excludes five categories of vehicles including "a motor vehicle owned by the named insured." *Id.* While G.S. § 20-279.21(b)(4) states that "[a]n 'uninsured motor vehicle,' as described in subdivision (3) of this subsection includes an 'underinsured highway vehicle'. . . .," that section goes on to separately define "underinsured highway vehicle" as:

[A] highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

N.C. Gen. Stat. § 20-279.21(b)(4). Unlike G.S. § 20-279.21(b)(3), section (b)(4) does not specifically exclude a motor vehicle "owned by the named insured" from the term "underinsured motor vehicle" although it does specifically exclude three other types of vehicles. Plaintiff argues that because "uninsured motor vehicle" includes one that is "underinsured" pursuant to both the policies at issue and the Financial Responsibility Act, then the definition of an "underinsured vehicle" also excludes coverage for a vehicle owned by the named insured; and thus, there is no underinsured coverage available to defendants under either of the policies issued to Young or Wimberly.

The question of whether an insured is entitled to stack liability coverage from the tortfeasor's policy with the underinsured coverage under the same policy presents a novel issue in this State. Plaintiff directs this Court to several decisions wherein courts in other jurisdictions have disallowed such recovery citing the danger of effectively converting underinsured motorist coverage into liability coverage, resulting in insurance carriers charging more for underinsured motorist coverage to match the cost of the presently more expensive liability coverage. *See e.g., Millers Cas. Ins. Co. v. Briggs,* 100 Wash.2d 1, 665 P.2d 891 (1983); *Myers v. State Farm Mut. Auto. Ins. Co.,* 336 N.W.2d 288 (Minn. 1983). (The result in this case has since been overruled by an amendment to Minn. Stat. s 65B.49, subd. 3a(5) which requires that an occupant be allowed to collect UIM benefits from the policy covering the vehicle involved in the accident.); *Sullivan v. State Farm Mut. Auto. Ins. Co.,* 513 So.2d 992 (Ala. 1987). We have reviewed these decisions, and while we do not necessarily disagree with their rationale, the language of our statute and the principles of statutory interpretation require us to reach a different conclusion. Rather, we must conclude that any interpretation of the policies at issue which would exclude "an owned vehicle" from UIM coverage is void as being contrary to the requirements of the Act.

The provisions of the Act are written into every automobile liability policy as a matter of law, and when a provision of the policy conflicts with a provision of the statute favorable to the insured, the provision of the statute controls. *Insurance Co. v. Chantos,* 293 N.C. 431, 238 S.E.2d 597 (1977), *appeal after remand,* 298 N.C. 246, 258 S.E.2d 334 (1979). Accordingly, an exclusionary provision of a policy which contravenes the Act is void. *Insurance Co. v. Roberts,* 261 N.C. 285, 134 S.E.2d 654 (1964).

The exclusion of a particular circumstance from a statute's general operation is evidence of legislative intent not to exempt other particular circumstances not expressly excluded. *Batten v. N.C. Department of Correction,* 326 N.C. 338, 389 S.E.2d 35 (1990). Similarly, the statutory construction doctrine of *expressio unius est exclusio alterius* provides that the mention of specific exceptions implies the exclusion of others. *Morrison v. Sears, Roebuck & Co.,* 319 N.C. 298, 354 S.E.2d 495 (1987). Furthermore, North Carolina courts disfavor exclusionary language in insurance policies and will construe such language strictly against the insurer. *Durham City Bd. of Education v. National Union Fire Ins. Co.,* 109 N.C. App 152, 426 S.E.2d 451, *disc. review denied,* 333 N.C. 790, 431 S.E.2d 22 (1993).

The rules of statutory construction require presumptions that the legislature inserted every part of a provision for a purpose and that no part is redundant. *Hall v. Simmons*, 329 N.C. 779, 407 S.E.2d 816 (1991). The Financial Responsibility Act is remedial and will be liberally construed to carry out its beneficent purpose of providing compensation for those injured by automobiles. *Jones v. Insurance Co.*, 270 N.C. 454, 155 S.E.2d 118 (1967).

We are guided in our decision by the recent holding of this Court in *Cochran v. N.C. Farm Bureau Mutual Ins. Co.*, 113 N.C. App. 260, 437 S.E.2d 910, *disc. review denied*, 335 N.C. 768, ___ S.E.2d ___ (1994). In that case we were asked to decide whether an underinsured highway vehicle as defined in G.S. § 20-279.21(b)(4) could include a state-owned vehicle despite the fact that the definition of an uninsured motor vehicle specifically excluded "[a] motor vehicle that is owned by . . . a state." N.C. Gen. Stat. § 20-279.21(b)(3). The insurer in that case argued that due to the fact that G.S. § 20-279.21(b)(4) states that: "[a]n 'uninsured motor vehicle,' as described in subdivision (3) of this subsection, includes an 'underinsured highway vehicle'. . . ," to qualify as an underinsured highway vehicle, it must meet the definition of an uninsured motor vehicle; and thus, an underinsured highway vehicle, like an uninsured vehicle, could not include a state-owned vehicle. We disagreed, holding in pertinent part that:

> The language in Section 20-279.21(b)(4) that an uninsured motor vehicle includes an underinsured highway vehicle is far from being clear and unambiguous as to whether to qualify as an underinsured highway vehicle, a vehicle must first meet the definition of uninsured motor vehicle set out in Section 20-279.21(b)(3). Furthermore, an underinsured highway vehicle has its own specific definition in Section 20-279.21(b)(4) which is different from the definition of an uninsured motor vehicle and which makes no mention of an exclusion for state-owned vehicles. Because of this ambiguity, we resort to tenets of statutory construction to ascertain legislative intent . . . .

> Although it is possible for a vehicle to be an underinsured vehicle and an uninsured vehicle simultaneously where the vehicle is insured with liability limits less than those required by Section 20-279.5 or where the vehicle is self-insured, to attempt to define **every** underinsured highway vehicle as an uninsured motor vehicle under all circumstances is, by the definitions contained in

Sections 20-279.21(b)(3) and (b)(4), an impossible task . . . . Due to the impossibility of every underinsured highway vehicle meeting the definition of an uninsured motor vehicle as defined in Section 20-279.21(b)(3) and because state-owned vehicles are specifically excluded in the circumstance where an uninsured motor vehicle is involved, but are not specifically excluded in the definition of an underinsured highway vehicle in Section 20-279.21(b)(4), we do not believe the legislature intended to fully incorporate the definition of an uninsured motor vehicle into the definition of an underinsured highway vehicle . . . .

For these reasons, we hold that an underinsured highway vehicle as defined in Section § 20-279.21(b)(4) can include a state-owned vehicle.

*Cochran*, 113 N.C. App. at 262-63, 437 S.E.2d at 911-12. The *Cochran* court also realized that an opposite interpretation of the language of G.S. § 20-279.21(b)(4) would conflict with the required liberal construction of the Motor Vehicle Safety and Financial Responsibility Act. *Id.* at 263, 437 S.E.2d at 912. Similarly, the definition of underinsured highway vehicle makes no mention of an exclusion for a "motor vehicle owned by the named insured." Additionally, the definition of "underinsured highway vehicle" contains its own less-inclusive list of specific exclusions, which are all also named as exclusions to the definition of an "uninsured motor vehicle" and would be repetitive if the definition of an uninsured motor vehicle were fully incorporated into the definition of an underinsured highway vehicle. Thus, in accord with our decision in *Cochran*, we hold that an underinsured highway vehicle as defined in G.S. § 20-279.21(b)(4) can include a motor vehicle owned by the named insured, and the provisions in the policies issued by plaintiff attempting to exclude such coverage are invalid and unenforceable. The legislature can amend the statute so as to authorize the exception which plaintiff included in its policies. However, this Court may not.

Accordingly, because we hold that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law, summary judgment on this issue is reversed as to plaintiff and the case is remanded with instructions to enter summary judgment in favor of defendants on this issue and for trial on defendants' remaining counterclaims.

Reversed and Remanded.

Chief Judge ARNOLD and Judge WYNN concur.